UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEREK BARDELL** | CIVIL ACTION |
| VERSUS | NO. 20-3245 |
| **JEFFERSON PARISH SCHOOL BOARD** | SECTION "L" (1) |

## ORDER AND REASONS

Before the Court are Defendant Jefferson Parish School Board's two "Motions to Dismiss Under 12(b)(6)." R. Doc. 68; R. Doc. 75.[1] Plaintiff Derek Bardell opposes the motions. R. Doc 77. Considering the briefing of the parties, the applicable law, and the record, the Court now rules as follows.

### I. BACKGROUND

This case arises from the employment relationship between Plaintiff Derek Bardell and Defendant Jefferson Parish School Board ("Defendant" or "the School Board"). R. Doc. 65. Plaintiff alleges that Defendant engaged in employment discrimination and retaliation because of Plaintiff's race as an African American, his sex, and his age. *Id.* at 3, 5-6. Plaintiff was hired by the School Board as Dean of Student Services in 2007. Plaintiff alleges that, in December 2010, he was wrongfully demoted to a teaching position. *Id.* at 2.

Plaintiff alleges that subsequently, over the course of ten years, he applied to over 80 positions including Executive Director, Assistant Principal, and Principal. *Id.* at 5; R. Doc. 34. Noting that he hold two masters degrees and a doctorate degree from Vanderbilt University, Plaintiff contends that he was extremely qualified for these positions. Plaintiff alleges that the School Board wrongfully refused to promote him to any of these positions and instead hired

---

[1] These motions are identical. Thus, the Court's analysis applies equally to both.

younger, non-African American males who were less qualified. Plaintiff further alleges that the School Board's decisions not to promote him were in retaliation for his reporting its discriminatory activities. Specifically, Plaintiff alleges that he reported to the Human Resources Department ("HR") various acts of discrimination including his wrongful demotion, pay being taken away, and employment file not being expunged of derogatory information. R. Doc. 1 at 5-6. As a result of this protected activity, Plaintiff alleges that the School Board retaliated against him by refusing to promote him.

In July 2020, Plaintiff alleges that he filed a charge with the Equal Employment Opportunity Commission ("EEOC") regarding the School Board's alleged discrimination. *Id.* at 1. Plaintiff allegedly received his right-to-sue letter on October 8, 2020. *Id.* He subsequently brought this suit on November 30, 2020. *Id.*

In his complaint, Plaintiff alleges (1) discrimination and (2) retaliation under Title VII of Civil Rights Act, 42 U.S.C. 2000 *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. § 23:301 *et seq.*, and 42 U.S.C. § 1981; (3) intentional infliction of emotional distress under La. C.C. art. 2315; and (4) breach of employment contract. *Id.* at 5-7. Plaintiff seeks back pay, front pay, non-pecuniary losses, past and future pecuniary losses, punitive damages, attorney fees and costs, and other damages. Id. at 8. Defendant answered Plaintiff's initial complaint, denying Plaintiff's allegations and asserting a sixteen affirmative defenses.

On February 18, 2022, Plaintiff amended his complaint. R. Doc. 65. Notably, this amended complaint alleges that, throughout 2020, the School Board failed to promote him to 172 positions for which he applied due to his age and race. *Id.* Plaintiff also alleged in the amended

complaint that he had filed a second charge with the EEOC describing these additional actions[2] and that he received his right-to-sue letter on January 25, 2022. *Id.* at 1. Defendant has not yet answered this complaint.

## II.     PRESENT MOTION

The School Board moves to dismiss all of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). R. Doc. 75. The School Board asserts that Plaintiff's pleadings are subject to dismissal for the following reasons: (1) Plaintiff failed to administratively exhaust certain claims; (2) Plaintiff's claims are time-barred; and (3) all remaining claims fail to pass the plausibility threshold. R. Doc. 75-1 at 12-35.

Plaintiff filed an opposition. R. Doc. 77. However, Plaintiff does not substantively respond to any of Defendant's arguments.[3] *Id*. Rather, Plaintiff asks that the Court instruct him on how to amend his complaint if amendment is necessary.[4] *Id.* at 2.

## III.    APPLICABLE LAW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

---

[2] Plaintiff's complaint is contradictory regarding the date on which this second EEOC charge was allegedly filed—he refers to both August 19, 2020 and October 18, 2020 as the pertinent date. R. Doc. 65 at 1, 3.

[3] Plaintiff asserts that Defendant's motion was untimely. R. Doc. 77 at 2. However, Defendant's motion was not, in fact, untimely under any scheduling order.

[4] The Court notes that it is the function of counsel to press their client's case. Nevertheless, in an effort to avoid harsh consequences for Plaintiff resulting from his counsel's unsatisfactory briefing, the Court has conducted extensive research on the law applicable to Plaintiff's claims so as to rule fairly on Defendant's motion. However, the Court observes that it is not in the habit of conducting research and making arguments for litigants, particularly when they have counsel.

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating a 12(b)(6) motion, the Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). However, a court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## IV.  DISCUSSION

The Court will consider, in turn, the School Board's arguments that (1) Plaintiff failed to administratively exhaust claims; (2) Plaintiff's claims are time-barred; and (3) all remaining claims fail to pass the plausibility threshold. R. Doc. 75-1 at 12-35.

### A. Administrative Exhaustion

First, Defendant contends that Plaintiff failed to administratively exhaust claims regarding the School Board's alleged failures, in 2020, to promote him to any of the jobs to which he applied and, therefore, those claims should be dismissed. R. Doc. 75-1 at 12-14. Defendant observes that Plaintiff's first EEOC charge does not include allegations supporting these claims. *Id.* Although Plaintiff, in his Fourth Amended Complaint,[5] alleges that he has filed a second EEOC charge, Defendant notes that this second charge is not in the record. *Id.* The School Board thus claims that Plaintiff has failed to prove that he exhausted his administrative remedies as to claims based on allegations purportedly made in the second EEOC charge. *Id.*

---

[5] This pleading is entitled "Amended Complaint." R. Doc. 65. For clarity, the Court refers to this complaint as the "Fourth Amended Complaint."

Absent record evidence of this charge, the School Board contends that the Court "does not have subject matter jurisdiction" over those claims. *Id.* at 12.

Defendant is correct that a plaintiff must timely file a charge with the EEOC in order to successfully bring claims under Title VII and the ADEA. *Tillison v. Trinity Valley Electric Co-op. Inc.*, 204 F. App'x 346 (5th Cir. 2006). However, Defendant's arguments are unavailing. First, the School Board is incorrect that administrative exhaustion of Title VII and ADEA claims is a jurisdictional requirement. Defendant cites *Tolbert v. United States*, 916 F.2d 245 (5th Cir. 1990) for support, but the Fifth Circuit abrogated *Tolbert* in *Davis v. Fort Bend County,* expressly holding that "Title VII's administrative exhaustion requirement is not a jurisdictional bar to suit." 893 F.3d 300, 306 (5th Cir. 2018); *see also Stancu v. Hyatt Corp*. No. 3:20-864, 2021 WL 495883 (N.D. Tex. Jan. 26, 2021) (holding that the ADEA's administrative exhaustion requirement is not jurisdictional). Moreover, Plaintiff's claims under § 1981 are not subject to an administrative exhaustion requirement. *See Johnson v. Pride Indus.*, 7 F.4th 392, 407 (5th Cir. 2021).

Second, as explained above, the Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff" when ruling on a motion to dismiss. *Lane*, 529 F.3d at 557. Here, Plaintiff alleges that he filed a second charge of discrimination with the EEOC describing failures to promote that are additional to those described in his first EEOC charge. R. Doc. 65 at 1. At the motion-to-dismiss stage, it is sufficient that Plaintiff has alleged that he has filed EEOC charges regarding his claims; he need not produce record evidence of such charges. *See Randolph v. Pinecrest Retirement Communities*, No. 9:15-39, 2015 WL 6725322 (E.D. Tex. Nov. 3, 2015) (refusing to dismiss

5

Plaintiff's claims when she stated that she had filed EEOC charges but did not attach copies of these charges to her complaint).

Accordingly, the Court finds that Plaintiff's claims may not be dismissed at this stage merely because Plaintiff has not come forward with evidence of a second EEOC charge. Notwithstanding this, in the interest of efficiency and judicial economy, the Court will require Plaintiff to file evidence of the second EEOC charge into the record within one week of this order so that the Court can be assured that all of Plaintiff's claims have been administratively exhausted.

### B. Plaintiff's Discrimination Claims under (1) Title VII of the Civil Rights Act, (2) the ADEA, (3) La. R.S. § 23:301, and (4) Section 1981

Plaintiff appears to assert disparate treatment and hostile work environment theories of discrimination.[6] First, the court addresses the extent to which Plaintiff's disparate treatment claims are time-barred.[7] Next, the Court examines whether Plaintiff has pled plausible claims under each of the pertinent theories.

#### 1. Limitations Periods

First, the School Board contends that some of Plaintiff's disparate treatment claims are time-barred. R. Doc. 75-1 at 14-19. Thus, Defendant argues that Plaintiff improperly rests his disparate treatment claim, in part, on time-barred instances of failure to promote. *Id*.

---

[6] The Court interprets Plaintiff's "discrimination" claim as bringing a disparate treatment claim, and interprets his "harassment" claim as bringing a hostile work environment claim. Plaintiff additionally alleges a disparate impact claim. However, Defendant does not challenge this theory of discrimination in its motion, and the Court finds that Plaintiff has pled a plausible disparate impact claim.

[7] Defendant does not raise whether Plaintiff's hostile work environment claims are time-barred. Defendant likely recognizes that, under the "continuous violation theory" hostile work environment claims are not always time-barredUnlike in a case alleging discrete violations, a hostile environment plaintiff is not limited to filing suit on events that fall within this statutory time period because her claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice." *Stewart v. Miss. Transp. Com'n*, 586 F.3d 321, 328 (5th Cir. 2009) (internal citations omitted).

The Court agrees that some of Plaintiff's claims are time-barred. The School Board observes that, in the context of a disparate treatment claim, "[t]he Supreme Court has clarified that each discrete adverse employment action, including a failure to promote, 'constitutes a separate actionable unlawful employment practice' and 'starts a new clock for filing charges alleging that act.'" *Smith v. AT&T Mobility Servs.*, LLC No. 21-20366, 2022 WL 1551838, at *2, ---F. App'x---, (5th Cir. May 17, 2022) (quoting *Nat'l R.R. Passenger Corp v. Morgan.*, 536 U.S. 101, 114, 102 (2002)). Thus, the limitations periods of the relevant statutes started to run after each failure to promote instance alleged by Plaintiff. *Id.*

The applicable limitations periods for Title VII of the Civil Rights Act, the ADEA, La. R.S. § 23:301, and 42 U.S.C. § 1981 are different and are therefore calculated separately below. Because Plaintiff's operative complaints do not specify the dates of all alleged failures to promote, the Court cannot identify which specific instances are time-barred. Thus, the Court uses an alternative method: it counts backwards from the dates on which Plaintiff filed the applicable charges or lawsuit to calculate the final day on which any failure to promote could be actionable. Thus, any instances of failure to promote that occurred before the dates set out below cannot support Plaintiff's disparate treatment claims.

      i. **Limitations Periods Under Title VII and the ADEA**

"Under both Title VII and the ADEA, a claimant must file a charge of discrimination within 300 days of the alleged discriminatory action." *Tillison*, 204 F. App'x at 348. If a plaintiff fails to do so, he is time-barred from bringing a suit in court based on that discriminatory action. *Id.* Here, Defendant asserts that Plaintiff filed his first EEOC charge on August 19, 2020. R. Doc. 75-1 at 14. Counting backwards 300 days, Defendant contends that October 24, 2019 is the last

day on which any adverse employment action by Defendant could support an actionable discrimination claim. *Id.*

The Court agrees with Defendant's methodology. However, Defendant is incorrect as to the date on which Plaintiff filed his first EEOC charge: the record reflects that Plaintiff filed the charge on July 28, 2020. R. Doc 36-2.[8] Three hundred days before this date was October 2, 2019. Thus, any disparate treatment claim based on a failure to promote prior to this date is time-barred.

### ii. Prescription Under La. R.S. § 23:301

The Louisiana Employment Discrimination Law ("LEDL"), La. R.S. § 23:301 *et seq.* is a state law analog of Title VII; "the scope of the LEDL is the same as Title VII." *Broussard v. Lafayette City-Par. Consol. Gov't*, 45 F. Supp. 3d 553, 581 (W.D. La. 2014). Under La. R.S. § 23:303(D), claims of discrimination are subject to a one-year prescriptive period, with the clock beginning to run on the date of the alleged discriminatory action. This period is, however, suspended during the EEOC's review of a plaintiff's claim. La. R.S. § 23:303(D). Here, the EEOC reviewed Plaintiff's claim for 70 days. R. Doc. 36-2; R. Doc. 36-3. Applying this tolling period to the statute's prescriptive period, Plaintiff is time-barred from basing his disparate treatment claims on acts of discrimination that occurred more than 435 days before he filed suit. Plaintiff filed the instant suit on November 30, 2020. R. Doc. 1. Thus, he cannot bring a claim under La. R.S. § 23:301 arising from any alleged acts of discrimination that occurred before September 22, 2019.

---

[8] In its motion, the School Board stated that it attached this document; however, it failed to do so. R. Doc. 75 at 11. But technically, Defendant attached it to an earlier motion to dismiss, which was denied as moot. R. Doc. 36-2. Because this document is central to Plaintiff's complaint, and was introduced into the record by Defendant, it may be properly considered on a motion to dismiss. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### iii. Prescription under 42 U.S.C. § 1981

"There is no federal statute of limitations for § 1981 actions, but the Supreme Court of the United States has held that the controlling statute of limitations is the 'most appropriate one provided by state law.'" *White v. United Parcel Serv.*, 692 F.2d 1, 2 (5th Cir. 1982). Accordingly, the Court looks to Louisiana law to determine the applicable limitations period. Under Louisiana law, the prescriptive period for § 1981 claims based on failures to promote is either one year or four years. *Willis v. Cleco Corp.*, No. 09-2103, 2011 WL 4443312 at *5 (W.D. La. Sept. 22, 2011). If "the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer," then the prescriptive period is one year; if not, then the period is four years. *Id.* at *6. Here, the School Board argues that all of the promotions that Plaintiff applied for would have created a "new and distinct relation" between the parties because all such promotions would have involved increases in salary and responsibility. *Willis*, 2011 WL 4443312 at *5; R. Doc. 75-1 at 17-19. Thus, Defendant contends that the applicable prescriptive period is one year. R. Doc 75-1 at 19.

The Court need not decide, at this stage, whether the applicable prescriptive period is one years or four years. As courts have explained, "determining the applicable statute of limitations for a failure to promote claim [under § 1981] is a fact intensive inquiry." *Willis*, 2011 WL 4443312 at *6. It follows, then, that this determination ought to be made only after an appropriate period for discovery rather than at the motion-to-dismiss stage. However, regardless of the outcome of this determination, the maximum prescriptive period for Plaintiff's § 1981 claims is four years. *Id.* Accordingly, Plaintiff is time-barred from bringing § 1981 claims based on alleged discrimination that occurred more than four years before he filed suit. Plaintiff filed

9

his lawsuit on November 30, 2020 and is therefore time-barred from bringing his claim based on failures to promote that occurred before November 30, 2016.

### 2. Plausibility: Disparate Treatment Claim

Next, the Court considers the School Board's argument that Plaintiff has not alleged sufficient factual matter to allege disparate treatment under Title VII of the Civil Rights Act, the ADEA, La. R.S. § 23:301 and 42 U.S.C. § 1981.[9] R. Doc. 75-1 at 25-29. The Court's analysis will focus solely on Plaintiff's claims that are clearly not time-barred under any of the pertinent statues.

To adequately allege discrimination under these statutes, a plaintiff must show that he: "(1) is a member of a protected group, (2) was qualified for the position at issue (3) . . . suffered some adverse employment action by the employer, and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

Defendant does not dispute that Plaintiff has properly alleged the first two elements: that he is a member of protected groups—African American males as to the Title VII, La. R.S. § 23:301, and § 1981 claims, and individuals over 40 years old with respect to the ADEA claim—and that he was qualified for the positions to which he applied. The Court agrees that Plaintiff has alleged his membership in these groups and his adequate qualifications, given his advanced degrees and significant experience. R. Doc. 1 at 2. However, Defendant argues that

---

[9] The elements of a discrimination claim under these statutes are substantively identical. Thus, courts routinely apply a single analysis to discrimination claims brought under these provisions. *See, e.g.*, *McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007) (analyzing Title VII and Louisiana law discrimination claims together); *Meinecke v. H &R. Block of Houston*, 66 F.3d 77 (5th Cir. 1995) (analyzing Title VII and ADEA discrimination claims together after observing that "the requirements under both statutes are essentially the same"); *Williams v. Franciscan Missionaries of Our Lady Health Sys., Inc.*, 190 F. Supp. 3d 561, 563 (M.D. La. 2016) ("This Court analyzes claims of discrimination based on Title VII and 42 U.S.C. § 1981, including racial discrimination and retaliation claims, under the same analysis.").

Plaintiff has not alleged any facts "from which it could be inferred that he was subject to an adverse employment action because of his race [or age]." R. Doc. 75-1 at 26, 28.

Defendant's argument is misplaced; if a plaintiff adequately alleges the third and fourth elements, then his pleading necessarily leads to the plausible inference that the employer took the adverse employment action *because* of the plaintiff's protected status. And here, the Court finds that Plaintiff has sufficiently pled the third and fourth elements. As to the third element, Plaintiff alleges that (1) in May 2020 he was denied a promotion to the position of assistant principal at Patrick Taylor School and (2) in June 2020 he was denied promotions to all 172 jobs for which he applied during the "2019/2020" application pool. R. Doc. 60 at 2. A failure to promote by an employer is indeed an adverse employment action. *Alvarado v. Texas Rangers*, 492 F.3d 605, 612 (5th Cir. 2007). Thus, Plaintiff has sufficiently pled this element.

Plaintiff has also sufficiently pled the fourth element: that he was "treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556. In his Fourth Amended Complaint, Plaintiff includes tables with information about the races, genders, and ages of those hired for the same positions to which Plaintiff applied. R. Doc. 65 at 5-14, 18-26. Specifically, these tables show that no African American males and no individuals over the age of 40 were hired for any of the 172 jobs for which Plaintiff applied.[10] *Id.* Thus, these data indeed suggest that Plaintiff was treated less favorably than those outside the protected groups. *Id.* The Court accepts these allegations as true and finds that Plaintiff has plausibly stated

---

[10] Technically, each of the School Board's failures to promote is a separate adverse employment action. Notably, Plaintiff alleges that black females were hired for approximately 46 of the positions for which he was not selected. R. Doc. 65 at 5-14. As to these positions, Plaintiff cannot allege that he was "treated less favorably" than non-black employees. 492 F.3d at 556. However, in *Jeffries v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025 (5th Cir. 1980), the Fifth Circuit held that, in the context of a discrimination claim, a plaintiff could assert that they are a member of a protected class based on a combination of both race and gender. Therefore, as to all positions— including those for which black females were hired—plaintiff can assert that he was treated less favorably because of his status as a black male.

a discrimination claim under the aforementioned statutes. Furthermore, that Plaintiff has adequately alleged each element of the claim for discrimination under these provisions leads to the plausible inference that the School Board's failure to promote Plaintiff was due to a protected status.

### 3. Plausibility: Hostile Work Environment

The School Board also challenges whether Plaintiff adequately alleges a hostile work environment claim. In order to state this claim, a Plaintiff must allege that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). For harassment to alter a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986).

Here, the School Board argues that Plaintiff has failed to allege the above elements with enough specificity. R. Doc. 75-1 at 19-20. Additionally, Defendant contends that Plaintiff has failed altogether to plead the third element: that the alleged harassment was based on Plaintiff's race. *Id.*

The Court finds that Plaintiff has sufficiently pled the elements of a hostile work environment claim. As mentioned, Plaintiff belongs to protected groups. As regards the second element, Plaintiff alleges that he was denied promotions, denied sabbatical leave, and was "constantly labeled a problem and a nuisance by the Defendants over a 10 year span on a daily

basis." R. Doc. 65 at 14. Plaintiff also alleges, regarding the third element, that this harassment was "due to Plaintiff being . . . African American." *Id.* And as to the fourth element, whether the harassment affected a term or condition of employment, the Court finds that Plaintiff's allegation that he was "constantly labeled a problem and a nuisance by the Defendants over a 10 year span on a daily basis" leads to the plausible conclusion that the alleged harassment was severe and pervasive. *Id; see also EEOC v. WC&M Enters., Inc.,* 496 F.3d 393, 400 (5th Cir. 2007) (quoting *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1073 (9th Cir. 2005) ("The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct.")); *id.* ("Indeed, this court has found that a regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII."). Turning to the employer's knowledge of the harassment, Plaintiff alleges that that it was the School Board itself that took the discriminatory action; thus, it necessarily follows that the School Board knew of such discrimination. *Id.* Because Plaintiff has sufficiently pled these elements, his hostile work environment claim should be allowed to continue.

### C. Plaintiff's Retaliation Claims under (1) Title VII, (2) the ADEA, (3) La. R.S. § 23:301, and (4) Section 1981

#### 1. Limitations Periods

The limitations analysis for Plaintiff's retaliation claims under Title VII, the ADEA, La. R.S. § 23:301, and § 1981 is the same as described above for Plaintiff's disparate treatment claims. Thus, the Court will not repeat its analysis here. However, for clarity, the Court reiterates its conclusions regarding the applicable limitation periods as they pertain to Plaintiff's retaliation claims. Thus, Plaintiff is time-barred from asserting: (1) Title VII- and ADEA- retaliation claims based on adverse employment actions that occurred before October 2, 2019, (2) retaliation under La. R.S. § 23:301 for adverse employment actions that occurred before September 22, 2019, and

13

(3) retaliation under § 1981 for adverse employment actions that occurred before November 30, 2016.

### 2. Plausibility

The School Board argues that Plaintiff has alleged insufficient factual matter to support a retaliation claim under Title VII, the ADEA, La. R.S. § 23:301, and § 1981.[11] Under these statutes, there are three elements of a retaliation claim: "(1) the employee engaged in an activity that is protected; (2) the employer took an adverse employment action against the employee; and (3) there is a causal connection between the protected activity and the adverse employment action." *Cephus v. Texas Health and Human Servs .Comm.*, 146 F. Supp. 3d 818 (S.D. Tex. 2015).

Defendant does not appear to dispute that Plaintiff's complaint sufficiently alleges the first two elements. And in his complaint, Plaintiff describes two categories of protected activity: (1) an April 20, 2020 incident in which he reported the School Board's discriminatory conduct to HR and (2) five instances—the first of which occurred on August 19, 2020—in which he filed charges of discrimination with the EEOC and complaints in the present lawsuit. R. Doc. 65 at 2-3. Regarding the second element, Plaintiff alleges that Defendant undertook adverse employment action by failing, in June 2020, to promote him to positions for which he was qualified. R. Doc. 60 at 2. Thus, the first two elements of the retaliation claim are sufficiently alleged.

However, Defendant contends that Plaintiff has failed to sufficiently allege the third element: the causal connection between his protected activities and the School Board's failure to

---

[11] The elements of retaliation are the same under Title VII, the ADEA, La. R.S. § 23:301, and § 1981. *See, e.g.*, *McCoy*, 492 F.3d at 556 n.4 (analyzing Title VII and La. R.S. § 23:301 claims together); *Smith v. Home Depot U.S.A.*, 102 F. Supp. 3d 867, 878 (E.D. La. 2015) (analyzing Title VII and ADEA claims together); *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, (5th Cir. 2003) ("[R]etaliation claims under § 1981 and Title VII [] are parallel causes of action. Each requires proof of the same elements in order to establish liability."). Thus, the Court's analyses applies to Plaintiff's claims under all of these statutes.

promote him. R. Doc. 75-1 at 24-25. First, Defendant notes that all of Plaintiff's charges or complaints of discrimination, beginning on August 19, 2020, were filed *after* the alleged failures to promote. *Id.* at 25. Thus, Defendant contends that it is impossible that these later-occurring protected activities could have caused earlier failures to promote. *Id.* Second, Defendant argues that "Plaintiff does not provide any details explaining the causal connection between the April 2020 protected activity"—that is, Plaintiff's alleged reports to HR of discriminatory activity by the School Board—and the School Board's subsequent failures to promote. *Id.* at 24.

The Court agrees with Defendant's first argument: Plaintiff's post-August 2020 filings of administrative charges and court complaints could not possibly have caused the School Board's prior failures to promote, which allegedly occurred two months before, in June 2020. However, Plaintiff's alternative theory—that his April 2020 protected activity caused the June 2020 failures to promote—does not suffer from any chronological deficiency. Moreover, the close temporal nexus between these events supports causation. This temporal relationship, coupled with Plaintiff's assertion that "but for his protected activities" he would not have been denied the promotions he sought, is sufficient to plausibly allege causation. R. Doc. 65 at 3. Thus, because Plaintiff has adequately pled all elements of retaliation, the Court will not dismiss these claims at this stage.

### D. Plaintiff's Intentional Infliction of Emotional Distress Claim

#### 1. Prescription

The School Board first contends that Plaintiff is time-barred from bringing a claim for intentional infliction of emotional distress ("IIED") based on any events that occurred more than one year before he filed the present suit. It is true that, usually, "IIED is a delictual claim subject to a one-year prescription." *Alexander v. Nixon*, No. 15-2300, 2015 WL 9997250 at *7 (W.D.

La. Dec. 15, 2015). However, when "the essence of the plaintiff's claim of [IIED] is the creation of a hostile work environment," Louisiana courts "apply the continuing violations analysis utilized in considering harassment claims under federal and state anti-discrimination laws." *Alcorn v. City of Baton Rouge*, 2002-2952 (La. App. 1st Cir. 12/30/04) 898 So. 2d 385, 388-89. Under this "continuing violations analysis," if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*. at 389. Here, the gravamen of Plaintiff's IIED claim concerns the School Board "label[ing him] a problem and a nuisance on a daily basis for over 10 years," as well as other acts that overlay with his hostile work environment claims. R. Doc. 65 at 14, 15. Thus, the Court may apply a continuing violations theory and consider events occurring throughout the entire time period during which Plaintiff alleges he was harassed resulting in IIED. Accordingly, the Court finds that Plaintiff's IIED claim is not time-barred.

### 2. Plausibility

Next, the Court considers the School Board's argument that Plaintiff does not sufficiently allege the elements of IIED. Under Louisiana law, there are three elements of a claim for IIED: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 91-0148 (La. 9/9/91); 585 So.2d 1205, 1209. As to the first element, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*

Here, Defendant avers that Plaintiff has not alleged sufficient facts to maintain any of these elements. R. Doc. 75-1 at 29-31. First, Defendant argues that the complained-of conduct was not outrageous enough, nor was the alleged emotional distress severe enough, to support Plaintiff's claim of IIED. *Id*. at 31. Additionally, Defendant claims that Plaintiff has not alleged any facts to support his conclusion that the School Board desired to inflict emotional distress on Plaintiff or knew that its conduct would have such a result. *Id*.

Although Defendant's points are not without some merit, the Court finds that Plaintiff has alleged enough factual matter to allow his claims to continue. In support of the first element, Plaintiff alleges that Defendant repeatedly "refused to take derogatory information out of his employment file" and refused him 172 promotions for which he was qualified based on his age and race. R. Doc. 65 at 15. Additionally, in other portion of the complaint, Plaintiff alleges that he was wrongfully "denied sabbatical leave" and "constantly labeled a problem and a nuisance by the Defendants . . . on a daily basis." *Id*. at 14. Admittedly, these allegations are somewhat vague. But the Court finds that, at this point, they are sufficient—albeit barely—to lead to a plausible conclusion that Defendant's conduct was extreme and outrageous. *See Boutte v. United Parcel Servs.*, No. 17-787, 2017 WL 3917144 at *7 (E.D. La. Sept. 7, 2017) (holding that a plaintiff's claim should not be dismissed when he alleged that defendant employer wrongfully denied his request for leave, took adverse employment action against him, and subjected him to daily harassment). Likewise, Plaintiff's allegations that he "could not eat, had trouble sleeping, concentrating, and was irritable and suffered from depression" plausibly allege severe emotional distress. *Id.* at 15. Finally, Plaintiff alleges that the School Board's refusals to expunge his record or promote him, and its "label[ing]" him as a nuisance indicate that it intended to cause Plaintiff severe emotional distress. *Id.*

17

Overall, while Plaintiff's allegations are not highly developed, they are sufficient to state a plausible claim for IIED. Thus, although it is a close call, the Court will not dismiss this claim. Of course, Plaintiff will ultimately have to come forward with evidence to flesh out and substantiate this claim—as well as all others—to survive summary judgment.

### E. Plaintiff's Breach of Contract Claim under Louisiana Law

The Court turns to Defendant's argument that Plaintiff has not sufficiently alleged breach of contract.[12] The elements of breach of contract under Louisiana law are: (1) the obligor undertook an obligation to perform; (2) the obligor failed to perform the obligation (the breach); and (3) the failure to perform resulted in damages to the obligee." *Denham Homes, LLC v. Teche Fed. Bank*, 2014-1576 (La. App. 1st Cir. 09/18/15), 182 So. 3d 108.

The School Board argues that Plaintiff's breach of contract claim should be dismissed because it is "ridiculous and unsupported." R. Doc. 75-1 at 32. Specifically, Defendant notes that Plaintiff has not attached a copy of the contract at issue—his employment contract—to his complaint. *Id.* But it is firmly established that the Court must take as true all well-pled allegations when ruling on a Rule 12(b)(6) motion. *Lane*, 529 F.3d at 557. Thus, Defendant's argument is misplaced: whether or not a claim is supported by record evidence is immaterial at the motion-to-dismiss stage. R. Doc. 75-1 at 32.

Here, Plaintiff has sufficiently alleged the elements of breach of contract. As to the first element, Plaintiff alleges that, on August 4, 2010, the School Board undertook an obligation—an employment contract—requiring it to pay Plaintiff a set salary, even in the event of his removal for cause. R. Doc. 65 at 15. As for the second element, Plaintiff alleges that, on December 30, 2010, the School Board failed to perform its obligation by lowering Plaintiff's pay in response to

---

[12] Defendant does not raise prescription as to Plaintiff's breach of contract claim.

18

his removal for cause. *Id.* Finally, considering the third element, Plaintiff alleges that he has suffered at least $200,000 in damages as a result of this breach. *Id.* at 16. Because Plaintiff has sufficiently pleaded all required elements, the Court must not dismiss his claim.

V.    **CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Dismiss under Rule (12)(b)(6), R. Doc. 75, is **GRANTED** in part and **DENIED** in part as specified below:

- Plaintiff's discrimination and retaliation claims under Title VII and the ADEA based on failures to promote that occurred before October 2, 2019 are time-barred and therefore dismissed.

- Plaintiff's discrimination and retaliation claims under La. R.S. § 23:301 based on failures to promote that occurred before September 22, 2019 are prescribed and therefore dismissed.

- Plaintiff' discrimination and retaliation claims under 42. U.S.C. § 1981 based on failures to promote that occurred before November 30, 2016 are time-barred and therefore dismissed.

In all other respects, Defendant's Motion to Dismiss, R. Doc. 75, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's duplicate Motion to Dismiss, R. Doc. 68, is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff file his second EEOC charge and corresponding right-to-sue letter into the record within one week of the entry of this order.

New Orleans, Louisiana this 25th day of July, 2022.

ELDON E. FALLON
UNITED STATES DISTRICT JUDGE