## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BARDELL** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 20-3245** |
| | * | |
| **JEFFERSON PARISH SCHOOL** | * | **SECTION: "L" (1)** |
| **BOARD** | * | |
| | * | |

## ORDER AND REASONS

Before the Court are motions for summary judgment by Plaintiff Derek Bardell, at R. Doc. 95, and Defendant Jefferson Parish School Board ("JPSB"), at R. Doc. 129.

Defendant JPSB has filed a memorandum in opposition to Plaintiffs' motion, at R. Doc. 116. Plaintiff has filed a memorandum in opposition to Defendant JPSB's motion, at R. Doc. 131. Having considered the briefing and the applicable law, the Court rules as follows.

## I.      BACKGROUND

This case arises from the employment relationship between Plaintiff Derek Bardell and Defendant Jefferson Parish School Board. R. Doc. 65. In August 2007, Plaintiff was hired by the JPSB as Dean of Student Services at Martyn Alternative School. R. Doc. 129-11 at 137. In 2010 his employment in this role was renewed for an additional two years.

Thereafter, in October 2010, following a field trip to Dillard University, three students and a paraprofessional educator reported to the principal that he used an expletive while speaking to a female student, that he made inappropriate comments about the anatomy of women on the campus, and that he left students unsupervised. R. Doc. 129-11 at 115-117. Plaintiff denied those allegations. He was suspended with pay pending an investigation. R. Doc. 129-11 at 114. Disciplinary proceedings were instituted, which resulted in his termination as Dean of Students

1

in December 2010. R. Doc. 129-11 at 106. Plaintiff alleges that the principal of Martyn coerced the paraprofessional and students into lying about his behavior on the field trip, and that he was wrongfully demoted to a teaching position at John Ehret High School. R. Doc. 140 at 3, 7; R. Doc. 129-4 at 19.

Plaintiff alleges that subsequently—beginning in 2013—he applied to over 80 positions including various executive directorships, assistant principal, and principal. *Id.* at 5; R. Doc. 34. Noting that he holds two master's degrees and is completing a doctoral degree from Vanderbilt University, Plaintiff contends that he was extremely qualified for these positions. Plaintiff alleges that the JPSB wrongfully refused to promote him to any of these positions and instead hired younger, non-African American males who were less qualified. Plaintiff further alleges that the School Board's decisions not to promote him were in retaliation for his reporting its discriminatory activities.  Specifically, Plaintiff alleges that he reported to the Human Resources Department ("HR") various acts of discrimination including his wrongful demotion, pay being taken away, and employment file not being expunged of derogatory information. R. Doc. 1 at 5-6. As a result of this protected activity, Plaintiff alleges that the JPSB retaliated against him by refusing to promote him.

In July 2020, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") regarding the JPSB's alleged discrimination. *Id.* at 1. Plaintiff allegedly received his right-to-sue letter on October 8, 2020. *Id.* He subsequently brought this suit on November 30, 2020. *Id.*

In his complaint, Plaintiff claimed (1) discrimination and (2) retaliation under Title VII of Civil Rights Act, 42 U.S.C. 2000 *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. §

23:301 *et seq.*, and 42 U.S.C. § 1981; (3) intentional infliction of emotional distress under La. C.C. art. 2315; and (4) breach of employment contract. *Id.* at 5-7. Plaintiff seeks back pay, front pay, non-pecuniary losses, past and future pecuniary losses, punitive damages, attorney fees and costs, and other damages. Id. at 8. Defendant answered Plaintiff's initial complaint, denying Plaintiff's allegations and asserting sixteen affirmative defenses.

On February 18, 2022, Plaintiff amended his complaint. R. Doc. 65. Notably, this amended complaint states that, throughout 2020 Plaintiff applied to 172 positions and the JPSB failed to promote him due to his age and race. *Id.* Plaintiff also states in the amended complaint that he had filed a second charge with the EEOC describing these additional actions[1] and that he received his right-to-sue letter on January 25, 2022. *Id.* at 1.

This case has a complex procedural history, and the complaint has been amended at least four times. In October 2021, JPSB filed a motion to dismiss Plaintiff's second amended complaint. On November 2, 2021, Plaintiff voluntarily dismissed his second amended complaint and advised that he would be re-filing the complaint once procedural issues had been cured. R. Doc. 43. On January 13, 2022, the District Court notified the parties that it had not ruled on the motion to dismiss because it was awaiting the promised amended pleading. R. Doc. 57. The Court ordered that plaintiff's amended complaint be filed by January 18, 2022. Bardell complied with this deadline and filed a Third Amended Complaint that included an additional 30 failure to promote claims within the same time frame as the original Complaint. JPSB's motion to dismiss was denied as moot but without prejudice to the filing of a new motion to dismiss the Third Amended Complaint after the close of discovery. R. Doc. 60.

---

[1] Plaintiff's complaint is contradictory regarding the date on which this second EEOC charge was allegedly filed—he refers to both August 19, 2020 and October 18, 2020 as the pertinent date. R. Doc. 65 at 1, 3.

During a February 11, 2022, status conference, the Court again granted plaintiff leave to amend his complaint and set a deadline of February 18, 2022. R. Doc. 63. Bardell complied with the deadline and filed a Fourth Amended Complaint to include an additional 172 failure to promote claims in light of his receipt of a right to sue letter from the Equal Employment Opportunity Commission concerning those claims. R. Doc. 65. The Court reset trial to begin on August 29, 2022, but did not provide a new deadline for amending pleadings.

JPSB filed a motion to dismiss on March 28, 2022. R. Doc. 69. That same day, Plaintiff's counsel moved to extend the submission date from April 27, 2022, to May 25, 2022, because she needed additional time to "complete move back into office after the storm." The Court granted the motion. On April 29, 2022, Plaintiff filed a motion for partial summary judgment, including a 14-page memorandum in support and 1000 pages of exhibits. R. Doc. 71. Later, in opposing JPSB's motion to dismiss, Plaintiff asserted that his motion for summary judgment made it clear that he should prevail as a matter of law. He requested that "if the court thinks that some changes need to be made to the Complaint," he be allowed 7 days to do so. R. Doc. 77.

The Court held a status conference on July 22, 2022. The Court denied Plaintiff's motion for summary judgment as premature, noting that JPSB had not yet answered and the formal period for discovery had not yet begun. Trial was reset to begin on November 14, 2022. On July 25, 2022, the Court issued an Order and Reasons granting in part and denying in part JPSB's motion to dismiss.

The Court began conducting weekly status conferences with the parties in late September 2022 to expedite discovery. R. Doc. 96. On September 27, 2022, Plaintiff filed the motion for summary judgment currently before this Court. R. Doc. 95. On October 21, 2022, after the Plaintiffs had begun holding depositions as ordered by the Court, the trial date was continued to

February 6, 2023, to allow sufficient time for the filing of dispositive motions. R. Doc. 157.

JPSB filed a motion for summary judgment on December 19, 2022. On January 20, 2023, the

Court notified the parties that it would have to continue the trial because an ongoing criminal

trial created a scheduling conflict. The trial date was reset to April 17, 2023. On February 1,

2023, the Plaintiff again sought leave to file a fifth amended complaint, and the Magistrate Judge

denied Plaintiff's motion on March 2, 2023. R. Doc. 160. Plaintiff asked that this Court overturn

the Magistrate Judge's decision, which this Court declined to do. R. Doc. 164.

## II.   PRESENT MOTIONS

During the course of this litigation the parties seem to disagree on almost everything, with the

exception of one issue. Both apparently feel that there are no disputes as to the facts since each

has filed a motion for summary judgment, claiming to be entitled to a judgment as a matter of

law. For completeness of context the Court now summarizes the positions of each party.

### A.  Plaintiffs' Motion for Summary Judgment

Plaintiff argues that he is entitled to summary judgment because he can make out a *prima

facie* case that he was discriminated against under Title VII, § 1981, ADEA, and the LEDL

because "he belongs to a protected group, he applied for a job, he was not hired and someone

outside the protected class filled the position, and he was qualified." R. Doc. 95-1 at 1. Plaintiff

notes that he has two masters' degrees, an EDL-1 certificate, and is working on a doctoral degree

in education and leadership. *Id.* at 3. Plaintiff alleges that, from June 2019 to the present, he has

"applied for pools that consisted of executive director/director (20), principal (70 positions),

assistant principal (59 positions), and dean (28 positions)" and that he has been denied each of

these jobs, despite having the qualifications for those jobs. *Id.* at 3-4.

Plaintiff then contends that his certifications establish that he is more qualified for the

positions of principal, assistant principal, dean, and executive director/director than any of the candidates who were actually hired by the JPSB. *Id.* Plaintiff provides a list, which takes up three and a half pages of his 16-page motion for summary judgment, that comprises a list of names of individuals that he alleges were hired for administrative positions over the Plaintiff, despite their lacking qualifications that he had. Specifically, his argument is that these people were hired despite the fact that they lacked EDL certification or that it had expired as of March 2, 2022.[2]

Plaintiff further argues that he is entitled to summary judgment on the issue of retaliation. In particular, Plaintiff points to two "protected activities" that he alleges he engaged in before he suffered adverse employment actions. First, Plaintiff contends that, during 2020, he "complained to H.R. which failed to remove derogatory information out of employment file because he was an African American Male over 40." *Id.* at 11. Plaintiff alleges he was denied for a promotion in June 2020 and "did not even receive an interview." *Id.* Plaintiff then engaged in another protected activity when he filed this lawsuit on March 22, 2021. Plaintiff contends that he again was denied a promotion or even an interview for a promotion. *Id.* Plaintiff argues that "due to the close proximity of the retaliation, less than 4 months, Plaintiff has established a causal link." *Id.* at 13.

Finally, Plaintiff argues that JPSB breached "several" contracts with the Plaintiff. R. Doc. 95-1 at 13. He cites in particular two instances when he contends that JPSB breached a contract

---

[2] The Court notes that there is dispute among the parties, because the certificates to which Plaintiff cites in his Motion for Summary Judgment, and in his opposition memorandum to Defendant's Motion for Summary Judgment, were not produced in discovery. Plaintiff's counsel stated during the deposition of Donna Joseph that she printed these certificates from the website of the state Department of Education. R. Doc. 135-5 at 57-58. Defendant argues that these certifications could not be validated, and that in some cases certificates proffered by Plaintiff belonged to individuals not even confirmed to have been JPSB employees. R. Doc. 142-1 at 1. Subsequently, Defendant argues, it produced "complete copies of each individual's certification" through discovery. *Id.* at 2. Further, "counsel for Plaintiff only printed the older certifications of each individual, not the updated certifications, and then relies on the older certifications to argue that the JPSB hired administrators who were not certified for the positions they held." *Id.*

with Plaintiff.

First, Plaintiff argues that the employment contract he had for his vice principal position "states in paragraph VIII(B) that if the Assignee, i.e. Plaintiff is removed for cause, he must continue to receive the same pay," but that Defendant's pay was decreased shortly after he was removed from his administrative position. *Id.* Further, Plaintiff argues, he "did not sign the agreement voluntarily to remove himself as Dean and reduce his pay," and therefore he should not have been removed or had his pay reduced. *Id.* This breach cost him at least $800,000 in pay and benefits, Plaintiff argues. *Id.*

Second, Plaintiff argues that "Article 18 section J Paragraph 21 and 22 of 2009-2012 of Jefferson Federation of Teachers"—ostensibly the Collective Bargaining Agreement between the JPSB and the Jefferson Federation of Teachers—states that "after 12 months of derogatory information being in file the teacher has a right to have the derogatory information removed from file upon written request to assistant superintendent or designee." *Id.* at 14-15. Plaintiff argues that on June 13, 2012, he wrote to Brandon Williams, the designee, asking that "derogatory information" regarding his removal from his dean of students position be removed from his employment file. *Id.* at 15. Plaintiff contends that Defendant failed to remove this information, and that Defendant breached Plaintiff's employment contract by this failure. *Id.* Plaintiff also alleges that this caused "at least $800,000 in damages." *Id.*

### B. Defendant JPSB's Motion for Summary Judgment

Defendant argues that it is entitled to summary judgment on all of Plaintiff's claims against the JPSB that survived the motion to dismiss: 1) post-October 2, 2019 discrimination/retaliation claims under Title VII and the ADEA based on failure to promote; 2) post-September 22, 2019 discrimination/retaliation claims under the LEDL; 3) failure to promote

claims under § 1981; 4) Title VII hostile work environment claim; 5) Title VII disparate impact claim; 6) state law breach of contract claim; and 7) state law IIED claim.

Defendant first recounts its version of the factual background of Plaintiff's complaints against the JPSB. Defendant alleges that Plaintiff was hired as a Dean of Student Services for Martyn Alternative School ("Martyn") in August 2007, after having previously resigned from a temporary non-certified teaching position due to disciplinary action taken against him. R. Doc. 129-1 at 3. Defendant alleges that Plaintiff's contract at Martyn was renewed in 2010, but that shortly thereafter he was fired because three students and a para-professional alleged that he had behaved inappropriately during the trip. *Id.* Plaintiff was investigated and then terminated, but because he was a tenured teacher he was demoted to a teaching position and transferred to John Ehret High School ("John Ehret"). *Id.* at 4. Subsequently, his pay was decreased from $60,194.00 to $49,349. *Id.* Plaintiff has taught at John Ehret from 2010, the time of his demotion, until the present. *Id.*

Under this Court's July 25, 2022 Order and Reasons, at R. Doc. 84, Defendant notes, the only failure to promote act that Plaintiff timely alleges with regard to his July 28, 2020 EEOC charge regards his application to an assistant principal position at Patrick F. Taylor Science & Technology Academy ("Patrick Taylor") in May 2020. R. Doc. 129-1 at 5. Defendant cites a Request to Hire form completed by the school's principal, Sharmeika Daniels ("Daniels")." *Id.* According to that form, the position received 85 applications, and a four-member panel interviewed 11 applicants. The panel selected Mr. Brent Vollenweider ("Vollenweider"), who scored the highest in the interview and who had been an assistant principal at Hearst Elementary for three years. *Id.* at 6.

After August 2020, Defendant alleges, Plaintiff submitted seven applications to various

administrative positions: four principal positions (one on April 28, 2021; two on June 6, 2021; and one on January 4, 2022), one Executive Director of School Support position (on June 1, 2021), one Executive Director of Transformation position (on June 1, 2021), and one assistant principal position (on January 4, 2022). *Id.* According to the deposition testimony of Laura Roussell, the JPSB's Chief Academic Officer of Teaching and Learning, Plaintiff was not eligible for the two executive director positions because those require previous experience as a principal. *Id.* at 7. Similarly, he was not eligible for the four principal positions because those require experience as an assistant principal. *Id.* As a result, he was not considered for any of those six positions. JPSB argues that these decisions were not based on his race, age, or sex, but on qualification requirements for each position.

Defendant notes that Plaintiff was invited to participate in interviews for the assistant principal pool. *Id.* at 8. Defendant alleges that Plaintiff did not show up to the first round of interviews, on February 21st and 22nd, 2022, but that he was again invited to and did participate in a second round of interviews, on May 2nd and 3rd, 2022. *Id.* Because he scored under the threshold on an interview that included a coaching task and a problem solving task, Defendant alleges, Plaintiff did not make it into the assistant principal pool. *Id.* at 9.

Turning to Plaintiff's factual allegation that he was denied professional sabbatical leave on July 25, 2019, Defendant alleges that his request was untimely according to the policy clearly stated on the application. *Id.* at 9. Further, JPSB's Chief Executive Officer of Human Resources, Donna Joseph ("Joseph") testified in her deposition that "the JPSB has a long standing policy of not granting professional sabbatical leave to teachers, especially considering that there's a shortage of teachers in Jefferson Parish" and that at present, only medical leave requests are granted. *Id.* at 10. And, to his allegation that he requested that "derogatory information" be

purged from his personnel file, Defendant argues that the information in his file was disciplinary information rather than "derogatory statements made about a teacher during evaluations or minor complaints about another teacher by other individuals." *Id.* at 11. Disciplinary files are not purged, Joseph testified in her deposition, and the CBA contract only grants a teacher the "right to request" removal rather than a right to have it removed. *Id.* at 11. Further, Joseph testified that she "has never known of any such request that has been granted." *Id.*

Defendant further suggests that the three activities Plaintiff refers to as "protected activities" are not protected activities because they did not involve him reporting discrimination to Human Resources. First, while Bardell alleged that the letter he sent to human resources in June 2012 included references to the JPSB's refusal to expunge his folder and rejection of his applications, he acknowledged in his deposition that "the letter does not contain any complaints or language about discriminatory activity," *id.* at 12, but rather asks the JPSB to purge his personnel file, *id.* Secondly, Bardell's allegation that he engaged in protected activity on April 28, 2020 by reporting discrimination based on his race, gender, and age was, Defendant argues, "nothing more than an inquiry as to why he was not considered for the assistant principal position at Patrick Taylor." *Id.* at 13. Finally, Mr. Bardell alleges that the complaint he filed in this Court on November 30, 2020, and two subsequent amended complaints, are protected activities and that the JPSB retaliated by "denying him an additional 70 principal positions, 59 assistant principal positions, and 28 dean positions." *Id.* But, Defendant argues, there are only seven instances of failure to promote (those that have occurred since August 2020, discussed above) that could possibly be done in retaliation for a complaint filed on November 3, 2020. *Id.*

On April 5, 2023, this Court asked the parties to provide supplemental briefing about a Dean of Students position to which one discovery document indicated Plaintiff had applied, but

which neither party addressed in their motions for summary judgment.

Defendant produced documents from its files indicating that on May 6, 2020—the same day Plaintiff applied to the assistant principal position at Patrick Taylor—Plaintiff also applied to a Dean of Students role at Thomas Jefferson High School. R. Doc. 171-2 at 1. However, Defendant alleges that the role was not given to any applicants, but was instead given to Carrie Coleman in an involuntary transfer. *Id.* Coleman, a black woman whose age does not appear in the record, had originally become a Dean of Students in 2018 at Henry Ford Middle School. *Id.* at 2. In 2019, the JPSB voted to close that school, and as a result Coleman was involuntarily transferred to a Dean of Students role at Marrero Middle School for the 2019-2020 school year. *Id.* at 3. In 2020, Marrero Middle School eliminated one of its two Dean of Students positions, and Coleman was eliminated "because she was the newer dean." *Id.* Marrero Middle School eliminated her position on May 5, 2020, the same day the Thomas Jefferson availability was posted. *Id.* "[I]n order to comply with the terms of her employment contract," Defendant notes, Coleman was transferred into the Thomas Jefferson role. *Id.* No candidates from the online application pool were chosen for the position. *Id.*

In response, Plaintiff argues that "Ms Coleman was interviewed and scored, her score being a 4.0 and she was placed in a pool of people who could be placed in the dean position. This begs the question as to why Plaintiff was not interviewed." R. Doc. 172-2 at 2. But Plaintiff's counsel seems to misunderstand the nature of the score listed in the documents provided by Plaintiff: the 4.0 score Carrie Coleman received was with regards to her proficiency in her eliminated position at Marrero Middle School. Coleman's score was compared with that of Candice London, the other dean in the same role, to determine who was to be eliminated. R. Doc. 171-10. Because both Deans received a 4.0, the JPSB had already stated, Coleman was eliminated because she

was the newer dean, R. Doc. 171-2 at 3, and transferred to Thomas Jefferson.

The 4.0 is not, as Plaintiff's counsel suggests, a rating that Coleman received during a competitive interview process in which Plaintiff also took part.

### III.   APPLICABLE LAW

### A.  Summary Judgment Standard

Summary judgment is proper if the pleadings and the evidence gathered in discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The moving party bears the burden of "informing the Court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

"A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.

1986). However, "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence" are not sufficient to show a genuine dispute of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## IV.    ANALYSIS

First, this Court finds it necessary to note that this lawsuit, though filed in 2020, is based on a nearly 13-year long period during which Plaintiff alleges that he suffered discrimination and retaliatory activity by the Defendant. While Plaintiff generally alleges that the JPSB first began taking discriminatory actions against him when he was removed from his Dean of Students position in 2010, in the Fourth Amended Complaint he pleads that he "applied for various pools of jobs for executive director, director, principal, assistant principal and dean of student from June of 2019- present." R. Doc. 65 at 1. And in his memorandum in opposition to Defendant's motion for summary judgment, Plaintiff alleges that he did not receive any interviews for positions from the 2018-2019 schoolyear onwards, until he received an interview in 2022. R. Doc. 140 at 10.

In its July 25, 2022 Order and Reasons, this Court considered in detail the applicable prescriptive periods for Plaintiff's claims under Title VII, the ADEA, and LEDL. R. Doc. 84 at 19. This Court held that Plaintiff's claims under the Title VII and the ADEA for incidents or actions that occurred before October 2, 2019 were time-barred; causes of action he claimed under the LEDL before September 22, 2019 were also time-barred. *Id.*

At that time, this Court left open the question of the applicable prescriptive period for § 1981 actions, which it held to be a fact-based determination that could be made "only after an appropriate period for discovery," *id.* at 9, but which in any event would prevent the Plaintiff from bringing claims that accrued before November 20, 2016, *id.*

The Court will now turn to an analysis of the prescriptive period for Plaintiff's § 1981 claims.

**A. Prescriptive Period for § 1981 Claims**

"There is no federal statute of limitations for § 1981 actions, but the Supreme Court of the United States has held that the controlling statute of limitations is the 'most appropriate one provided by state law.'" *White v. United Parcel Serv.*, 692 F.2d 1, 2 (5th Cir. 1982). Accordingly, in this case the Court looks to Louisiana law to determine the applicable limitations period. Under Louisiana law, the prescriptive period for § 1981 claims based on failures to promote is either one year or four years. *Willis v. Cleco Corp.*, No. 09-2103, 2011 WL 4443312 at *5 (W.D. La. Sept. 22, 2011). If "the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer," then the prescriptive period is one year; if not, then the period is four years. *Id.* at *6. In its motion for summary judgment, JPSB repeats its argument that all of the promotions that Plaintiff applied for would have created a "new and distinct relation" between the parties because all such promotions would have involved increases in salary and responsibility. *Willis*, 2011 WL 4443312 at *5; R. Doc. 75-1 at 17-19. Thus, Defendant contends that the applicable prescriptive period is one year. R. Doc 129-1 at 16.

Plaintiff argues that the change in employment that he experienced is not sufficient to constitute a "substantial change" under *Police Ass'n ex rel. Cannatella v. City of New Orleans*, 100 F.3d 1159, 1171 (5th Cir. 1996), and so the four-year prescriptive period should apply. In *Police Ass'n* the Fifth Circuit suggested that "a promotion from associate to partner in a law" would certainly constitute a substantial change in position, and that "denial of a promotion from billing clerk to supervisor" may. *Id.* In finding that a promotion from police officer to sergeant qualified as a "substantial change," the court reasoned that police sergeants "carry supervisory

duties not shouldered by regular officers," and also are afforded "higher salary and enhanced eligibility for further promotion" *Id.*

In his deposition, Plaintiff acknowledged that the role of dean involves more pay and greater responsibilities than a teaching role and noted that it requires certain qualifications that teachers are not required to have. R. Doc. 12-4 at 30-31. Plaintiff contends that "he should have remained" a dean and been "promoted from [that role], thus there really was no change but a regression." R. Doc. 140 at 6. The Court cannot credit this argument. First, every claim that is conceivably within the prescriptive period here—whether after 2016 or 2019—involves the Plaintiff applying for a promotion, not receiving a demotion. Second, if a promotion from teacher to dean would constitute a "substantial change" in terms of role, responsibility, and pay, a demotion from dean to teacher would also constitute a substantial change.

In this instance, a promotion from teacher to administrator is directly analogous to a promotion from police officer to sergeant: a dean gains supervisory duties and a higher salary, and this promotion opens up opportunities for further advancement. Under a straightforward application of *Police Ass'n*, a promotion from teacher to dean (or other administrator) is a "substantial change," and the one-year prescriptive period applies. As a result Plaintiff is time-barred from bringing § 1981 claims based on failure to promote actions that occurred more than a year before he filed suit—so claims before November 30, 2019 are prescribed.

Having decided the applicable prescriptive period for the Plaintiff's § 1981 claims, the Court will now analyze the viability of the Plaintiff's discrimination claims after 2019.

## B. Discrimination claims under § 1981, Title VII, the LEDL, and the ADEA that are based on failure to promote acts that occurred after September 22, 2019

To maintain a claim of disparate treatment discrimination under § 1981, Title VII, the

ADEA, and the LEDL, a plaintiff must offer direct evidence of discrimination or utilize the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See, e.g.*, *McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007) (analyzing Title VII and Louisiana law discrimination claims together); *Meinecke v. H &R. Block of Houston*, 66 F.3d 77 (5th Cir. 1995) (analyzing Title VII and ADEA discrimination claims together after observing that "the requirements under both statutes are essentially the same"); *Williams v. Franciscan Missionaries of Our Lady Health Sys., Inc.*, 190 F. Supp. 3d 561, 563 (M.D. La. 2016) ("This Court analyzes claims of discrimination based on Title VII and 42 U.S.C. § 1981, including racial discrimination and retaliation claims, under the same analysis.").

 "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). For a statement to constitute direct evidence of discrimination, the statement must be "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'" *Maestas v. Apple, Inc.*, 546 F. App'x 422, 427-28 (5th Cir. 2013) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010)).

If a plaintiff lacks direct evidence of discrimination and relies upon the *McDonnell Douglas* indirect method of proof, he must establish a *prima facie* case of discrimination with allegations and proof that the plaintiff (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than those outside the protected class. *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999). Once the plaintiff establishes the prima facie case, the burden shifts to the employer to

"articulate a legitimate, nondiscriminatory reason for the employment action." *Id.* Finally, "the plaintiff counters by offering evidence that the legitimate, non-discriminatory reasons are really a pretext for discrimination." *Id.* at 180.

In this instance, Plaintiff does not allege or provide evidence of direct discrimination. During his deposition, Bardell stated that he was not aware of anyone at school making negative comments about his race, age, or sex. R. Doc. 129-4 at 81-82. Rather, he testified, he inferred discrimination from "actions that have been taken against [him]." *Id.* at 82. As a result, this Court relies on the *McDonnell Douglas* framework to analyze Plaintiff's claims of discrimination against JPSB. Plaintiff argues that he establishes a prima facie case of discrimination for the following reasons: 1) He "is a black male over 40 and thus belongs to a protected group, he applied for the job and was not hired, and someone outside the protected class was hired." R. Doc. 140 at 12. 2) He met all of the qualifications for principal, assistant principal, dean, director, and executive director. *Id.* at 12-13. Plaintiff cites his 24 years teaching experience, two masters' degrees, in-progress doctoral degree, and numerous certifications as further evidence of his qualifications. *Id.* at 13. 3) Plaintiff was denied "all of the pool jobs and school jobs" that he applied for from January 2020 to the present. *Id.* at 14. Finally, with regards to 4), Plaintiff argues that these jobs were filled by people who were not black men over 40. Plaintiff argues that these facts are sufficient to constitute a prima facie case, and therefore the burden shifts to the JPSB to show a non-discriminatory reason that he was hired.

Given the evidence in the record, the Court can determine that Plaintiff applied for nine administrator jobs within the prescriptive period: four principal positions (one on April 28, 2021; two on June 6, 2021; and one on January 4, 2022), one Executive Director of School Support position (on June 1, 2021), one Executive Director of Transformation position (on June 1, 2021),

17

two assistant principal positions (one on May 6, 2020; one on January 4, 2022), and one dean of students position (on May 6, 2020).

For six of these positions, Plaintiff has failed to make a prima facie case, because he has failed to show that he was qualified for the positions. The evidence in the record is clear that he was ineligible for the principal positions and for the executive director positions, because he did not have the experience required for any of those roles. With regards to a principal, Laura Roussell testified, "we would be looking for someone who had some level of prerequisite assistant principal experience in becoming a principal." R. Doc. 129-8 at 98. It is an undisputed fact that Plaintiff does not have experience as an assistant principal. Furthermore, both executive director positions involved oversight of "between fifteen and eighteen principals, and because Mr. Bardell had no experience in being a principal . . . he was not considered for this interview." *Id.* at 99. Roussell testified that the JPSB had only interviewed principals for this position. *Id.* Plaintiff has adduced no facts that contradict the evidence provided by the JPSB on these questions sufficient to create a genuine dispute of material fact as to whether he met the qualifications for the principal role or for these executive director positions.

Plaintiff has, however, made a prima facie case with regards to at least two roles to which he applied during the prescriptive period—the Patrick Taylor vice principal position and the dean of students position at Thomas Jefferson. Neither party disputes that he is a member of a protected class, that he was qualified for these positions, that he was denied these positions, and that both were filled with someone outside of his protected group: the Patrick Taylor vice principal position was filled by Brent Vollenweider, a white man under 40, and the Thomas Jefferson dean of students position was filled by Carrie Coleman, a black woman whose age is not part of the record.

18

However, in both cases the JPSB has met its burden of articulating "a legitimate, nondiscriminatory reason for the employment action." *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999). With regards to the Patrick Taylor position, Plaintiff does not dispute the evidence submitted by Defendant that the principal of Patrick Taylor, Sharmeika Daniels, filled out a Request to Hire form showing that the school had interviewed 11 candidates out of 85 who applied online: 5 white, 5 black, and 1 other. R. Doc. 129-1 at 5. Each candidate was interviewed by a 4-member panel. *Id.* The Request to Hire form shows that Vollenweider received the highest score on the two-part evaluation. Furthermore, Vollenweider was a dean in the 2017-2018 school year, and then he was the assistant principal at Hearst Elementary for the 2018-2019 and 2019-2020 school years. As a result, he would be moving to the position at Patrick Taylor with prior experience as an assistant principal.

With regards to the Dean of Student Services position, the Defendant has established that the Plaintiff was not selected because the JPSB filled the position with Carrie Coleman. Coleman was already serving as a Dean of Students at Marrero Middle School, and the JPSB eliminated her position on May 5, 2020. R. Doc. 171-10. The JPSB transferred her involuntarily to the dean position at Thomas Jefferson to maintain her title, salary, and benefits rather than selecting an application from the online application pool. R. Doc. 171-2 at 3; R. Doc. 171-4.

Finally, the Court considers the assistant principal pool position, for which Plaintiff applied on January 4, 2022. For this position, Plaintiff has made out at least three requirements of the prima facie case: that he is a member of a protected group, that he was qualified for the position, and that he did not receive the position. However, this was a pool position, in which all applicants who passed a certain score on the interview made it into a "pool" from which they became eligible to apply to all assistant principal roles in JPSB. Plaintiff has not introduced

evidence to suggest that the candidates who did make it into the pool did not include black men over 40, or that he was "treated less favorably than those outside the protected class." *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999). In this instance, however, even if the Plaintiff had introduced such evidence, the Defendant has provided a nondiscriminatory reason why the Plaintiff did not make it into the pool, even though he was invited to interview a second time, after he failed to show up to the first interview he was offered: he scored an average of 1.5 on a two-part interview, and applicants had to receive a 2.0 to be admitted into the pool. R. Doc. 129-8 at 84.

To prevail after an employer has provided a nondiscriminatory reason for failure to promote, "a plaintiff must present '*sufficient* evidence to find that the employer's asserted justification is false.'" *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 903 (5th Cir. 2000) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 137 (2000)). *See also Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) ("Showing that two candidates are similarly qualified does not establish pretext.") With regards to the Patrick Taylor, Thomas Jefferson, and pool positions, Plaintiff has not adduced facts that even suggest that either of these hirings was pretextual. As a result, his claims fail.

### C. Retaliation claims under the § 1981, Title VII, the ADEA, and LEDL that occurred after September 22, 2019

"To establish a prima facie case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII [or § 1981, the ADEA, or the LEDL]; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). Retaliation claims are analyzed under the

same burden-shifting framework as discrimination claims: "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007)).

An employee has engaged in protected activity if he has (1) opposed any practice made an unlawful employment practice by the statute, or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or hearing. *Alleman v. Louisiana*, 698 F. Supp. 2d 644, 663-64 (M.D. La. 2010) (citing *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996)).

Plaintiff's argument that he is entitled to summary judgment on the issue of retaliation hinges on his contention that he engaged in two "protected activities" within the prescriptive period. As is discussed above, Plaintiff contends that, on July 23, 2020, he "complained to H.R. which failed to remove derogatory information out of [his] employment file because he was an African American Male over 40."[3] R. Doc. 140 at 24. Plaintiff then engaged in another protected activity, Plaintiff argues, when he filed his third amended complaint on March 22, 2021. In both instances, Plaintiff argues that he was denied a promotion or even an interview for a promotion after engaging in the protected activity. *Id.* In an affidavit referenced in a footnote, Plaintiff claims that he "complained that [he] was being treated differently because [he] was an African

---

[3] There is some slippage about the date when this alleged activity occurred. Plaintiff originally identified the day as April 20, 2020 in his motion for summary judgment, but in his opposition to Defendant's motion for summary judgment, he says that the activity took place on July 23, 2020. In his affidavit the Plaintiff writes that he complained in "July of 2020," R. Doc. 140-9 at 4, and that is the date found on the email produced in discovery, below.

American male with regard to promotion, leave and removal of derogatory/disciplinary

information" and that he "engaged in protected activity when [he] filed Complaints on

11/30/2020, 3/22/2021, and 9/30/2021 and when it [sic] filed the additional EEOC charges on

January 25, 2022 and July 28, 2020. R. Doc. 140-9 at 19.

There is no dispute that Plaintiff engaged in a protected activity when he filed the EEOC

charges or when he initiated the current lawsuit.[4] However, Defendant argues in its motion for

summary judgment that Plaintiff did not engage in protected activity in 2020 when he

complained to Dr. Karen Favorite, an HR employee to whom Plaintiff testifies he complained

"by phone and email." R. Doc. 129-4 at 49. The email that Plaintiff sent to Dr. Favorite, on July

23, 2020, reads as follows:

> On Thu, Jul 23, 2020 at 3:45 PM DEREK BARDELL
> <derek.bardell@jpschools.org> wrote:
>
> Dear Dr. Favorite:
>
> I hope this email finds you well. Thank you so much for taking my
> grievance complaint regarding my application for the Assistant Principal
> position at Patrick Taylor High School. As I indicated to you, I did not
> receive a performance task, an interview or courtesy email regarding
> my candidacy as I was imminently certified and qualified for the
> position. The said position was filled by a gentleman with very few
> years of experience. Again, thank you for your consideration and
> courtesy and I look forward to your follow up.
> --
> Best,
>
> Derek D. Bardell

R. Doc. 129-5 at 55. Defendant argues that this cannot constitute protected activity because

"there is no reference in the email about the JPSB's failure to expunge his personnel file, the

JPSB's failure to promote him, or the JPSB's denial of his sabbatical leave, and there certainly is

---

[4] In his affidavit, when Plaintiff refers to having "filed Complaints on 11/30/2020, 3/22/2021, and 9/30/2021," R. Doc. 140-9 at 19, he is referring to the dates when he amended his Complaint in this Court.

no reference to the JPSB engaging in any discriminatory conduct." R. Doc. 129-1 at 34. Under the straightforward definition of protected activity put forth in *Alleman*, the Defendant is correct. In *Alleman*, the Court found that meetings the plaintiff had with her supervisors about the difficulties of working with a co-worker were not protected activities because the evidence about those meetings "did not indicate that the plaintiff complained about being discriminated against because of her race or sex." *Alleman v. Louisiana*, 698 F. Supp. 2d 644, 664-65 (M.D. La. 2010). The same is true here: while Plaintiff's email does indicate that he inquired into why he did not get the position, he did not complain of discrimination or of any sort of unlawful activity by the Defendant. The July 2020 email is thus not protected activity and therefore it cannot form the basis for a retaliation claim.

With regards to the instant litigation and the EEOC charges that preceded it, Plaintiff cites *Strong v. United Health Care Sys., L.L.C*, 482 F. 3d 802, 808 (5th Cir. 2000) to argue that "due to the close proximity of the retaliation, less than 4 months, Plaintiff has established a causal link," *id.* at 13, between his filings and the subsequent denials of promotion that he faced. Essentially, Plaintiff suggests that temporality alone is enough to satisfy *prima facie* cause and to demonstrate that the nondiscriminatory reasons offered by Defendant for its failure to promote Plaintiff are pretextual.

In fact, in *Strong v. Univ. Health Care Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007), the Fifth Circuit rejected a plaintiff's appeal when a district court granted summary judgment to a defendant employer. The plaintiff in that case argued that a three and a half month time span between her complaint and termination was "solid evidence of retaliation" enough to survive a but-for cause challenge even after "the defendant stated legitimate, nondiscriminatory reasons for firing the plaintiff." *Id.* at 807. The Fifth Circuit rejected that argument, reiterating a previous

holding that "[w]ithout more than timing allegations . . . summary judgment in favor of [the defendant] was proper." *Strong*, 482 F.3d at 807-08 (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 656 (5th Cir. 2004)). As the district court explained, while "temporal proximity alone, when very close, can in some instances establish a *prima facie case* of retaliation, we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation." 482 F. 3d at 808.

Of the nine failure to promote acts that are considered at this stage in the litigation, seven occurred after Plaintiff filed his EEOC complaints and this litigation.[5] These positions are the two executive director positions, the four principal positions, and the assistant principal pool, all discussed in the previous section. As this Court detailed above, the Defendant has established legitimate, nondiscriminatory reasons for why Plaintiff was not hired into any of these roles, even though he was interviewed for the assistant principal pool. Because Defendant has not provided argument or evidence sufficient to show pretext, and because temporality is not enough on its own to establish pretext, the Court does not find a genuine issue of material fact as to Plaintiff's retaliation claim.

### D.  Hostile work environment claim under Title VII

To state a claim that he has suffered a hostile work environment, Plaintiff must allege that (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on protected status; (4) the harassment affected a term, condition, or privilege or employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 125 (5th Cir. 2011) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

---

[5] Because his unsuccessful applications to Patrick Taylor and Thomas Jefferson on May 6, 2020 were before his EEOC charges or this lawsuit, neither will not be considered here.

Workplace harassment affects a term, condition, or privilege of employment when it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez*, 670 F.3d at 651 (quotation omitted). This standard does not require a "tangible psychological injury," but it does necessitate more than a "mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, (1986). To determine whether the conditions of employment have been altered to the extent that the workplace has become "hostile," courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez*, 670 F.3d at 651 (quoting *Ramsey*, 286 F.3d at 268). In addition, "the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, (1998)).

Plaintiff argues that he suffered a hostile work environment because he "was lied on and accused of cursing at a student" in 2010, and as a result of this incident, "[o]ver the next ten years, he was denied every job he sought in Jefferson Parish School System and the derogatory information in his file was left in despite it to be proven lies." R. Doc. 140 at 7. Further, he testifies that he "watched other people of different races get promoted without much excuse, even after they were demoted." *Id.* at 8. He cites names of two JPSB employees, Jennifer Buuck and Jamie Zapico, both white women whom he alleges were "both demoted and promoted." *Id.*

Defendant argues that Plaintiff has not provided any factual evidence demonstrating that he was denied promotions due to his age, sex, or race. Further, even accepting Plaintiff's factual

allegations regarding his removal from his dean position as true, "Plaintiff readily admits that the reason he was denied promotions over a ten year period is because JPSB employee coerced another JPSB employee into falsely accusing him of cursing at a student. Plaintiff has not presented any evidence or even raised an argument that this alleged coercion was race, age, or gender based." R. Doc. 142-1 at 7. With regards to Plaintiff's contention that white, female employees were demoted and then promoted, Defendant argues that these allegations are "conclusory and unsupported by the Record" because the HR Audit Reports produced in discovery—on which Plaintiff is basing this contention—do not show why an employee moved from one position to another. *Id.* In other words, there is no evidence in the record that either woman identified by Bardell was demoted and then re-promoted.

As a threshold matter, even if the Court found that Plaintiff was denied promotion due to his race, sex, or age, the Fifth Circuit has held that "[d]enials of promotions, although considered adverse employment actions sufficient to support a Title VII claim for retaliation, are not offensive or harassing in the way necessary to support a hostile work environment claim." *Montgomery-Smith v. George*, 810 F. App'x 252, 259 (5th Cir. 2020). Therefore, the promotion denials that Plaintiff alleges could not be the basis of a hostile work environment claim.

Plaintiff also has not identified any facts to suggest that anyone at JPSB engaged in the "type of 'extreme' conduct required by the Supreme Court to make out a claim for a hostile work environment." *Id.* During the following exchange in Plaintiff's deposition, Plaintiff discussed his allegation that he was labeled a nuisance by defendants over a ten-year span:

> Q: . . . . What I have a question about is the last sentence, you were constantly labeled a nuisance by the defendants over a ten-year span on a daily basis. My question is, what is the factual basis for that comment?

A: At this point, I mean, it's clear as day you are being – I'm being blackballed.
I'm complaining to Dr. Favorite, calling, e-mailing. I'm making EEOC complaints,
retaliation complaints.

Q: Did anybody ever tell you that you were a problem and a nuisance?

A: I've had that to be said, yes.

Q: By who?

A: I can't – I can't recall a name.

Q. Okay. When. Can you recall when?

Plaintiff's Counsel: Are you saying an exact date?

Defense Counsel: Any reference in time that you can provide me would be
appreciated.

Plaintiff's Counsel: If you can recall.

A: I can't, honestly.

W: Okay. So, basically, it's – it's – are you kind of arriving at that conclusion from
all of these other things that are going on?

A: Yes.

Q: Okay. It was never specifically expressed to you on a daily basis, was it? I
mean, verbally? How is that?

A: Verbally, but no. Action-wise.

R. Doc. 129-4 at 67-68. Plaintiff does not identify a single instance in which someone called him

a nuisance, or verbalized in any way that he was a problem—much less that he was a nuisance or

a problem due to his race, age, or sex. He, instead, suggests that the actions of the school board

in denying him promotions led him to believe that he was a nuisance and a problem. Because the

Fifth Circuit has held that, as a matter of law, denials of promotion cannot support a hostile work

environment claim, Defendant is entitled to summary judgment on this issue.

### E.  Disparate impact claim under Title VII

27

"Disparate impact claims involve 'facially neutral employment policies that create such statistical disparities disadvantaging members of a protected group that they are functionally equivalent to intentional discrimination.'" *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 491 (5th Cir. 2011) (quoting *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000)). To establish a *prima facie* case of employment discrimination under a disparate impact theory, "a plaintiff must show that the employer's facially neutral hiring standards select applicants in a significantly discriminatory pattern." *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 578 (5th Cir. 2003). To do so, a plaintiff must show "(1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two." *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 492 (5th Cir. 2011) (citing *McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 275-76 (5th Cir. 2008)).

In this instance, Plaintiff has not provided any facts that would support a claim of disparate impact, because he has not identified any specific employment policy that is causing a disparate impact on any racial, sex, or age group. When a plaintiff makes a disparate impact claim, "[t]he offending policy or practice must be specifically identified" because "the court cannot evaluate whether the offending policy caused a statistically significant disparity without knowing the offending policy with precision." *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, Civil Action No. 3:08-CV-0546-D, 2016 U.S. Dist. LEXIS 114562, at *18-19 (N.D. Tex. Aug. 26, 2016). "The aim of this requirement," the Supreme Court has held, "is to avoid the 'result [of] employers being potentially liable for the myriad of innocent causes that may lead to statistical imbalances.'" *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 100 (2008) (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989)).

As is amply demonstrated by the depositions with Laura Roussell and Donna Joseph, there are different hiring policies in place at JPSB for the various positions to which Plaintiff applied: school principals hire deans of student services, while executive directors in teaching and learning are hired by members of the Teaching and Learning Department. R. Doc. 142-1 at 8. Principals and assistant principals apply to the pools, and then different panels of existing administrators conduct interviews score candidates based on a rubric. R. Doc. 129-1 at 8. Plaintiff has not identified a single policy, or even one of these processes as a whole, as selecting applicants in a "significantly discriminatory pattern."

Further, even if this Court worked from the premise that each of these interview processes could and did constitute a "facially neutral policy," Plaintiff has not developed any facts showing a disparate effect on any of the groups to which he belongs. Plaintiff argues that a chart produced by Defendants during discovery, which shows age, race, and sex data for 126 administrators identified by Plaintiff as having been promoted over him, demonstrates that "white females and white males are fast tracked to administrators at a much more rapid pace than black females and considerably more for black males." R. Doc. 140 at 8.

But the chart does not contain any data about how long individuals worked for JPSB before they became administrators, or any other information other than mere age from which Plaintiff could even hypothesize that an individual had been "fast tracked." Even given the information available on the spreadsheet, Plaintiff conducts no statistical analysis to suggest that Black men over 40 who apply for promotions at JPSB are less likely to be successful than women or men of other races or ages, or even that they are underrepresented compared to Black male teachers over 40 in the Parish or in the country. Evidence merely suggesting one of these

inferences could be enough to allow Plaintiff to establish a *prima facie* case, but he has not

provided any such evidence.

The Court now turns to Plaintiff's breach of contract claims.

## F.  State law claim for breach of contract

The elements of breach of contract under Louisiana law are: (1) the obligor undertook an

obligation to perform; (2) the obligor failed to perform the obligation (the breach); and (3) the

failure to perform resulted in damages to the obligee. *Denham Homes, LLC v. Teche Fed. Bank*,

2014-1576 (La. App. 1st Cir. 09/18/15), 182 So. 3d 108. Because Defendant did not raise the

affirmative defense of prescription to Plaintiff's breach of contract claims in its Motion to

Dismiss,[6] this Court considers the arguments on the merits of Plaintiff's claims.

Plaintiff argues that the JPSB breached two contracts, of which Plaintiff was a party or

beneficiary. The Court will consider these in turn.

### 1.  Reduction of salary after Plaintiff's removal as dean

First, Plaintiff argues that the employment contract he had for his vice principal position

"states in paragraph VIII(B) that if the Assignee, i.e. Plaintiff is removed for cause, he must

continue to receive the same pay," but that Defendant's pay was decreased shortly after he was

removed from his administrative position. R. Doc. 95-1 at 13. Further, Plaintiff argues, he "did

not sign the agreement voluntarily to remove himself as Dean and reduce his pay," and therefore

he should not have been removed or had his pay reduced. *Id.*

But this is a plainly incorrect reading of the contractual language. Paragraph VIII(B),

---

[6] "Louisiana Civil Code Article 3499 provides that a personal action is subject to a liberative prescription of ten
years. Breach of contract actions are personal actions subject to a prescriptive period of ten years." *E. Sols., Inc. v.
Al-Fouzan*, 12-464 (La. App. 3 Cir 11/07/12), 103 So. 3d 1190, 1193. However, "in an ordinary civil case, where the
district court has no special duty to examine the pleadings, the affirmative defense of statute of limitations can be
waived and may not be raised by the court *sua sponte.*" *Lebouef v. Island Operating Co.*, 342 F. App'x 983, 984 (5th
Cir. 2009) (citing *Eriline Co. v. Johnson,* 440 F.3d 648, 657 (4th Cir. 2005))

cited by Plaintiff, states clearly that:

> (B)  In the event that Appointee should, during the term of this agreement, be removed for cause from he position covered hereunder, then he/she will be returned to the last position in which he/she has acquired tenure or to one paying at least the same salary as that position unless he/she chooses to terminate his/her employment.

R. Doc. 129-5 at 52 (markup in original document).

The parties do not dispute that, after he was removed for cause from his dean of student services position at Martyn—for, according to his personnel file, using an expletive towards a student and commenting on the anatomies of women to students during a field trip—the Plaintiff was returned to the last position in which he had acquired tenure: teacher. R. Doc. 129-4 at 30; R. Doc. 129-1 at 4. Plaintiff's signature appears on this contract. R. Doc. 129-5 at 54. Further, Plaintiff provides no facts to support his argument that he "did not sign the agreement voluntarily" or was put under any sort of duress in signing the contract with the JPSB. As a result, this breach of contract claim fails.

### 2.  Removal of derogatory information from personnel file

Plaintiff argues that "Article 18 section J Paragraph 21 and 22 of 2009-2012 of Jefferson Federation of Teachers"—the Collective Bargaining Agreement ("CBA") between the JPSB and the Jefferson Federation of Teachers—states that "after 12 months of derogatory information being in file the teacher has a right to have the derogatory information removed from file upon written request to assistant superintendent or designee." *Id.* at 14-15. Plaintiff argues that on June 13, 2012, he wrote to Brandon Williams, the designee, asking that "derogatory information" regarding his removal from his position at Martyn be removed from his employment file. R. Doc. 129-11 at 8. Plaintiff argues that Defendant's failure to remove this information from Plaintiff's file constitutes a breach of contract. *Id.*

Defendant argues, first, that the CBA only applies to teachers, not to administrators. R. Doc. 129-1 at 36 (citing R. Doc. 129-12 at 2). Because the Plaintiff was an administrator when the information about his dismissal was placed in his file, Defendant argues, the JPSB was not obligated to comply with his request. Further, Defendant argues, Donna Joseph testified that "under no circumstances are disciplinary files and employment history files removed from an employee's personnel file." R. Doc. 129-1 at 37. In fact, Joseph, the Chief Human Resources Officer at JPSB, testified that she "had never seen" such a request be granted. R. Doc. 129-6 at 46. As a result, "there is no basis in law or policy that would obligate the JPSB to remove Mr. Bardell's disciplinary files from his personnel file." *Id.*

On this issue, the Court begins with the text of the contract. While Plaintiff asserts that the CBA gives a teacher "the right to have the derogatory information removed" after 12 months, that is not what is promised by the CBA. The text from the CBA is as follows:

> **J.   Expungement of File Material**
>
> 1.   If derogatory material exists in a teacher's personnel file for more than twelve (12) calendar months, the teacher shall have the right to request (in writing) the
>
>      **Assistant Superintendent of Human Resources**, or designee, to remove or expunge all or portion(s) of such material. This decision shall not be subject to Article 15 of this Agreement and shall be non-precedential. Any reference to tar-

R. Doc. 129-7 at 57-58.

This language gives teachers the "right to request" that "derogatory information" be removed; it does not guarantee that it will be expunged. The same paragraph of the CBA does provide that "[a]ny reference to tardiness, absenteeism or the timeliness of filing lesson plans *shall* be removed or expunged upon its second anniversary . . ." (emphasis added)—no such promise is afforded to those who seek the expungement of "derogatory information."

Louisiana law provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties'

intent." La. Civ. Code art. 2046. Because the plain language of the CBA grants teachers only a "right to request" removal, this Court need not consider Defendant's arguments that Plaintiff was not a party to the CBA at the time the information about his dismissal was put in his folder, or that disciplinary files are not considered by the JPSB to be "derogatory information." Plaintiff had a "right to request" and he used that right. Under the CBA the JPSB had no responsibility to remove derogatory information after a teacher's request. Therefore, this breach of contract claim fails as a matter of law.

### A. State law claim for IIED

Under Louisiana law, there are three elements required to prove intentional infliction of emotional distress: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co*., 91-0148 (La. 9/9/91); 585 So.2d 1205, 1209. As to the first element, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*

Plaintiff does not address the IIED claims in his own motion for summary judgment or in his memorandum in opposition to Defendant's motion for summary judgment. Defendant argues that Plaintiff has not provided any evidence to "flesh out or substantiate" any of the actions that Plaintiff alleged caused IIED in his original complaint: JPSB's refusal to take "derogatory" information out of Plaintiff's employment file, refusal of 172 promotions since 2019, denial of Plaintiff's sabbatical leave request, and labeling him "a problem and a nuisance . . . on a daily basis" since 2012. R. Doc. 129-1 at 39 (citing R. Doc. 65 at 15, 3, 14).

As is discussed above in great detail, Plaintiff has not made a showing that any of the actions alleged above were "extreme and outrageous." As such, Defendant is granted summary judgment on the claims of IIED.

V.      **JUDGMENT**

Plaintiffs' Motion for Partial Summary Judgment, at R. Doc. 95, is **DENIED**. Defendant Derrick Burmaster's Motion for Summary Judgment, at R. Doc. 129, **GRANTED**. Judgment in this matter should be entered in favor of Defendant.

New Orleans, Louisiana, this 11th day of April, 2023.

**THE HONORABLE ELDON E. FALLON**
**UNITED STATES DISTRICT JUDGE**